UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EZ PEDO, Inc., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>MAYCLIN DENTAL STUDIO, INC., a Minnesota corporation, individually and dba KINDER KROWNS; and DOES 1-10,[1]<br><br>Defendants. | No. 2:16-cv-00731-KJM-CKD<br><br><br><br>ORDER |

The parties sell similar pediatric dental crowns. Plaintiff EZ-Pedo, Inc. sues defendant Mayclin Dental Studio, Inc. for copying the "look and feel" of its dental crown advertisements. Specifically, plaintiff brings trade dress and trademark infringement claims, state and federal unfair competition and false advertising claims, and deceptive trade practice claims. Defendant moves for partial summary judgment, arguing three specific advertisements are not

---

[1] Plaintiff has neither identified the DOE defendants, nor shown good cause for their missing identities. The federal rules provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. Fed. R. Civ. P. 4(m). Accordingly, the DOE defendants will be DISMISSED.

protectable trade dress or trademarks. Mot., ECF No. 42. Plaintiff opposes. Opp'n, ECF No. 45. The court heard oral argument on May 5, 2017. ECF No. 48.

As explained below, the court GRANTS defendant's motion.

I. BACKGROUND

    A. Parties

EZ-Pedo is a California corporation that manufactures and markets "prefabricated pediatric zirconia crowns," which are colorless, durable, all-ceramic crowns that mask disfiguration or stains on children's teeth. *See* Compl., ECF No. 1, ¶ 5.[2] EZ-Pedo sells its pediatric zirconia crowns to dentists throughout the United States. *Id.* ¶¶ 11, 12. Defendant is a Minnesota corporation and competitor that sells similar pediatric zirconia crowns under the business name Kinder Krowns. *Id.* ¶ 6.

    B. The Parties' Dispute

EZ- Pedo asserts defendant has intentionally copied four of EZ-Pedo's dental crown advertisements, and brings eight claims: Three federal Lanham Act claims, brought under 15 U.S.C. § 1051 *et seq.*, three California law claims and two Minnesota law claims. *See id*. ¶¶ 48-85 Defendant moves for partial summary judgment on a discrete issue: Whether plaintiff owns valid and protectable trademark or trade dress rights in three of the four advertisements it alleges defendant copied, as is required to succeed on plaintiff's Lanham Act claims. *See generally* Mot. Plaintiff's opposition focuses only on trade dress, not trademark. *See generally* Opp'n. When asked at hearing, plaintiff's counsel confirmed its focus is solely on trade dress. The court thus treats plaintiff's omission of any trademark discussion as a concession that its Lanham Act claims as to the three advertisements at issue here derive exclusively from trade dress rights. *See United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 999 (9th Cir. 2002) (omitting evidence in summary judgment opposition brief constitutes waiver of arguments

---

[2] Because the formal statement of undisputed facts omits basic, undisputed background information, the court cites plaintiff's complaint for certain information. *See generally* Compl.

2

relating to that evidence). This order therefore assesses whether a reasonable fact finder could find the three advertising campaigns constitute protectable trade dress.

   C. EZ-Pedo's Claimed Trade Dress

      1. "Beach Girl"

Plaintiff's claimed "Beach Girl" trade dress derives from an advertisement that centers on a stock photograph of a young girl on the beach that plaintiff downloaded in December 2013 from a third-party website, iStockphoto.com. Statement of Undisputed Facts ("SUF") 2, ECF No. 43; *see also* Pl.'s SUF Responses, ECF No. 45-1. Plaintiff did not create or take this photograph, *see* SUF 2-3, nor does the record show plaintiff owns or owned exclusive rights to it. Although EZ-Pedo has never printed the Beach Girl image on its product packaging, SUF 14, beginning in March 2014, EZ-Pedo used the Beach Girl advertisement in print distributed at the 2014 annual meetings of the California Society of Pediatric Dentistry ("CSPD") and the American Academy of Pediatric Dentistry ("AAPD"); both organizations also featured the Beach Girl advertisement in their trade journals; and EZ-Pedo displayed the image on secondary pages of EZ-Pedo's website. Fisher Decl.,[3] ECF No. 45-3, ¶¶ 9-10. For years, pediatric crown manufacturers, including plaintiff and defendant, have used photos of children to market and promote pediatric crowns, and the photos have appeared in trade journals and magazines. SUF 15-16 (citing pediatric dentist trade journal photos of smiling children contained in defendant's Exhibits I and Q attached to ECF No. 44, and deposition excerpts attached as Exhibits N, R, P to ECF No. 44).

Plaintiff contends it stopped investing in this trade dress within four months after its first use, in July 2014, after discovering defendant had copied it for use and displayed it in AAPD's July 2014 print journal. Fisher Decl. ¶¶ 13-14.

/////
/////
/////

---

[3] Jeffrey Fisher is a co-founder and the director of EZ-Pedo, Inc. Fisher Decl. ¶ 1.

3



*Plaintiff's Beach Girl Advertisement     Defendant's Alleged Infringing Copy*

*See id.* ¶ 13 (Figure 2).

### 2. "Gears"

Plaintiff crafted its claimed Gears trade dress in mid-2014. *Id.* ¶ 17. This design appears in an advertisement that depicts a photograph of metal gears plaintiff downloaded from a third-party website; the photograph is placed beside the slogan, "engineered for a precision fit," which plaintiff first used in flyers, brochures and on secondary website pages, in mid-2014. SUF 19, 22. Plaintiff has never used this image on product packaging. SUF 21. Plaintiff contends it stopped using this trade dress in June 2015, after discovering defendant had copied it to advertise its "Less Prep" crown line on its company website. Fisher Decl. ¶¶ 18-19. As shown below, plaintiff's Gears advertising incorporates images of two white tooth crowns viewed from the side; Defendant's incorporates an image of a blue crown viewed from the bottom.

/////

/////

/////

/////

/////



*Plaintiff's Gears Advertisement    Defendant's Alleged Infringing Copy*

*See* Fisher Decl. ¶ 18 (Figure 4).

### 3. "Blue CAD"

Plaintiff's claimed "Blue CAD" trade dress depicts a computer-aided drawing ("CAD") of a deep-blue-colored tooth with visible contours. *See* Compl. ¶¶ 35-40. The software program "3Shape 3D Viewer," through which the drawing was created, opens in such a manner to display images as one of three default color choices: Purple, grey or deep blue, with the actual color applied to the image selected by the user. *See* Vladimir Scherbak Decl., ECF No. 45-6, ¶ 6(b)-(g). Plaintiff first used this Blue-CAD image at a trade show in mid-2013. Fisher Decl. ¶ 5. Then, in 2014, plaintiff began associating the Blue-CAD image with a specific "V2" crown line. *Id.* ¶ 6. The Blue-CAD image was featured in plaintiff's print advertising, trade-show banners, brochures, flyers and on its website. *Id.* ("[w]e used it in thousands of printed materials that were distributed to pediatric dentists at trade shows, in flyers, and through other media"); SUF 25. Plaintiff has never displayed the Blue-CAD image on its physical products or product packaging. Plaintiff says it did start placing small blue dots on its V2 crowns in 2014; these dots, however, are not depicted in the summary judgment record, and there is no representation they are shaped like a tooth. *See* Fisher Decl. ¶ 7; *see also* Pl.'s Ex. A (attached to Fisher Decl.), ECF No. 45-4. Plaintiff contends defendant began copying the Blue-CAD advertisement in May 2014, by using the image shown below on its website, www.kinderkrowns.com, to market and sell its own line of "Less Prep" crowns. Fisher Decl. ¶ 8.

/////

| *Plaintiff's Blue-CAD Image* | *Defendant's Alleged Infringing Copy* |

*See id.* (Figure 1).

As noted, defendant moves for summary judgment on all Lanham Act claims deriving from these three advertisements, contending plaintiff has not shown any of them constitutes protectable trade dress.

II. LEGAL STANDARDS

A. Summary Judgment

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Then the burden shifts to the non-movant to show "there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the non-movant] must do more

than simply show that there is some metaphysical doubt as to the material facts"). Also, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48.

In deciding summary judgment, the court draws all inferences and views all evidence in the light most favorable to the non-movant. *Matsushita*, 475 U.S. at 587-88. "Where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant], there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

B. <u>Trade Dress Protection</u>

The Lanham Act is the federal statute governing trademark and trade dress protection, unfair competition and false advertising. *See* 15 U.S.C. § 1051 *et seq.* The Act defines when trademark and trade dress owners are entitled to federal judicial protection against infringement. A trademark can be a word, such as the brand name "McDonald's"; a phrase, such as "I'm lovin' it"; a logo, such as golden arches; a symbol; or some other mark that identifies the mark's owner as a product's source. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000) (citing 15 U.S.C. § 1127 for legal definition of trademark, which says "any word, name, symbol, or device, or any combination thereof [used or intended to be used] to identify and distinguish [a producer's] goods . . . from those manufactured or sold by others and to indicate the source of the goods . . . ."). The Act prohibits competitors from copying trademarks another competitor has registered, if such copying would confuse consumers about the product's origin. 15 U.S.C. § 1114 (2006) (trademark infringement).

The Lanham Act also protects against infringing upon a seller's unregistered trade dress. 15 U.S.C. § 1125(a) (2012); *see also Wal-Mart Stores, Inc.*, 529 U.S. at 209 (citing 15 U.S.C. § 1125(a)). Trade dress protection is broader than that for trademarks: Trade dress protection pertains to a product's image and overall impression; trademark protection pertains to a product's particular features. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) ("Trade dress refers generally to the total image, design, and appearance of a product and may include features

7

such as size, shape, color, color combinations, texture, or graphics.") (citation and quotations omitted). At trial, a trade dress infringement plaintiff has the burden to prove, by a preponderance of the evidence, that (1) its claimed trade dress is distinctive; (2) plaintiff owns the claimed trade dress; (3) the trade dress is nonfunctional; and (4) the defendant's use of a similar trade dress, without plaintiff's consent, is likely to cause consumer confusion as to "the source, sponsorship, affiliation, or approval" of plaintiff's goods. *See* 9th Cir. Model Civ. Jury Instr. 15.7 (2017) (citing 15 U.S.C. § 1125(a)(1)).

Trade dress most commonly pertains to tangible items such as product design and product packaging. *See, e.g.*, *Qualitex v. Jacobson Prods.*, 514 U.S. 159, 166 (1995) (dry cleaning pads' green-gold color scheme); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 808 (9th Cir. 2003) (Barbie doll's distinctive appearance); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613-15 (9th Cir. 1989) (clothing logo's color scheme and graphics); *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1535-37 (11th Cir. 1986) (Klondike ice cream bar's size; silver, blue and white wrapper; the foil's pebbled texture; polar bear and sunburst images). But unique arrangements and displays may also constitute trade dress. *See, e.g.*, *Two Pesos*, 505 U.S. at 763 (Mexican restaurant chain's look and décor); *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 542 (5th Cir. 1998) (golf course layout); *Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431 (S.D.N.Y. 2000) (wine shop bottle display).

Although the parties have not identified, and the court has not found, any case law extending trade dress protection to promotional flyers or advertisements, as EZ-Pedo contends the court should do here, the closest analogues appear to be the Eleventh Circuit's extension of trade dress protection to a "marketing idea," in *Orig. Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 831 (11th Cir. 1982), and the increasing acceptance of trade dress protection for a website's overall look and feel, *see, e.g.*, *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1239 (C.D. Cal. 2014) (website's features and functionality).

Despite the potential breadth of trade dress protection, this Lanham Act provision is not an invitation to shotgun litigation: Claimants bear a strenuous burden to show the claimed trade dress serves the role of identifying the owner as a source, either by showing the trade dress

1  is inherently distinctive or that over time it has acquired distinctiveness, also known as secondary
2  meaning. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 30 (2001); *Wal-Mart*, 529
3  U.S. at 211.

III.    ANALYSIS

Defendant through its motion challenges EZ-Pedo's ability to claim that trade dress protection applies to its Blue CAD, Beach Girl and Gears images. The core dispute centers on whether EZ-Pedo can satisfy the essential requirement of distinctiveness by meeting its burden to show the images are distinctive, either inherently or by virtue of having attained secondary meaning.

    A.  Inherent Distinctiveness

EZ-Pedo argues each one of its three advertisements qualifies as inherently distinctive trade dress because each contains "beautiful, glamorous, fanciful, recognizable" imagery. Opp'n at 7.

Proving inherent distinctiveness is demanding. To be inherently distinctive, claimed trade dress must be so unique, in context, that a buyer will rely on it to differentiate the source of the product with which it is associated. *Wal-Mart*, 529 U.S. at 213; *cf. AmBrit, Inc.*, 812 F.2d at 1536 (emphasizing uniqueness of ice cream wrapper; explaining it is "not a basic shape or common design. Rather . . . [the] wrapper with its square size, bright coloring, pebbled texture, polar bear and sunburst images, and distinctive style of printing is a complex composite of size, color, texture and graphics.... [creating] a distinctive visual impression[.]") (citation omitted). The Supreme Court has cautioned against applying vague tests for inherent distinctiveness, noting such tests "facilitate[] plausible threats of suit against new entrants based upon alleged inherent distinctiveness[,]" which in turn stifles competition. *Wal–Mart*, 529 U.S. at 213; *cf. Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 844 (9th Cir. 1987) (explaining, before *Wal-Mart* decided, that "overall impression may receive protection," but denying such protection where the claimed trade dress "was simply not the sort of arbitrary or uncommon trade dress that might qualify as inherently distinctive.") (citation omitted)).

/////

Since *Wal-Mart*, the Ninth Circuit has not revisited the articulation of a trade dress claimant's burden in proving inherent distinctiveness, but district courts within the circuit have interpreted the term as requiring manifestly unique arrangements. *See Morton & Bassett, LLC v. Organic Spices, Inc.*, No. 15-CV-01849-HSG, 2017 WL 1425908, at *6 (N.D. Cal. Apr. 21, 2017) (defining the ultimate question as "whether the . . . combination of elements is so unique, unusual or unexpected in this market that one can assume without proof that it will automatically be perceived by customers as an indicator of origin[.]") (citations and quotations omitted); *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2014 U.S. Dist. LEXIS 156675, at *8-9 (C.D. Cal. Nov. 5, 2014) (faulting plaintiff for not "clearly articulat[ing] what comprises their claimed trade dress" and "not sufficiently identify[ing] the particular elements of the packaging that they seek to protect"); *Spark Indus., LLC v. Kretek Int'l, Inc.*, No. CV 14-5726-GW ASX, 2014 WL 4365736, at *8 (C.D. Cal. Aug. 28, 2014) ("Spark is left with a fairly routine color scheme, graphic layout, and choice of font. . . .if the Court were to presume source identification based on these mundane differentiating characteristics, the Court does not see what types of trade dress would *not* be inherently distinctive.") (original emphasis).

Courts elsewhere also have required a claimant do more than just point to the "overall look"; it must "articulat[e] the specific elements which comprise its distinct dress." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997); *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 306 (3d Cir. 2014) ("[I]t is the plaintiff's duty to articulate the specific elements which comprise its distinct dress.") (brackets and quotations omitted); *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 415 (6th Cir. 2006) (requiring specific list of elements that comprise trade dress; warning "[i]t will not do to solely identify in litigation a combination as 'the trade dress.'") (citation omitted); *see also* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:3 (4th ed. 2014) ("[T]he discrete elements which make up the [trade dress claim] should be separated out and identified in a list.").

Here, EZ-Pedo has not done enough to withstand summary judgment based on inherent distinctiveness. EZ-Pedo merely brands each advertisement in its entirety as trade dress,

rather than defining what shapes, sizes, dimensions or specific elements within each advertisement combine to create a distinctive trade dress. *See* Opp'n at 8.

### 1. Beach Girl

Specifically, EZ-Pedo's claimed Beach Girl trade dress contains a single stock photograph of a child on a beach that plaintiff downloaded from a third-party website. SUF 3, 5. Also, just below the photograph, there are white tooth composites, dark-colored text describing these zirconia crowns and EZ-Pedo's logo and contact information. SUF 3, 5; Opp'n at 10. Although EZ-Pedo describes the advertisement using adjectives like "unique" and "distinctive," without specificity the court cannot evaluate whether the claimed trade dress is inherently distinctive. As currently defined, the court and competitors remain in the dark as to what EZ-Pedo purports to own. Are competitors never to advertise using the same third-party stock photograph? Can they use the same photograph, but pair it with different text, logo and company information?

### 2. Gears

EZ-Pedo's claimed Gears trade dress is also vaguely defined. The Gears advertisement depicts a graphic of gears accompanied by an "engineered for" slogan. Plaintiff has not shown what elements combine with this slogan to create protectable trade dress. For instance, is plaintiff claiming to own the right to arrange any image of metallic gears next to a slogan containing the words "engineered for"? Does the font matter? Do the color, size and shape of the gears matter? Can the word "engineered" be used without the preposition "for"?

### 3. Blue CAD

The Blue CAD trade dress likewise lacks detail. It is unclear whether plaintiff's claimed trade dress focuses on computer-aided shaded teeth with the same vertices and angles, or only when depicted in the same deep-blue color. Can a competitor use the same image, but in deep red?

### 4. Conclusion

Without the requisite specificity plaintiff's trade dress claims cannot proceed to trial under an inherent distinctiveness theory. *See Savant Homes, Inc. v. Collins*, 809 F.3d 1133,

1149 (10th Cir. 2016) (affirming summary judgment denial; emphasizing no genuine triable issue where claimant specifically listed purportedly distinctive elements but advanced no "facts indicating that these nine elements are original or unique so as to make the alleged trade dress inherently source-identifying."). Courts routinely refuse to advance such vaguely defined claims because "[w]ithout . . . a precise expression of the character and scope of the claimed trade dress . . . courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market." *Landscape Forms*, 113 F.3d at 381 (vacating preliminary injunction). "Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection." *Id*. "And if a court is unable to identify what types of designs will infringe a trade dress, how is a competitor . . . to know what new designs would be subject to challenge . . . ?" *Yurman Design*, 262 F.3d at 117 (citation omitted) (partially reversing court's judgment notwithstanding verdict); *see also Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995) (affirming dismissal with prejudice; warning courts against overextending trade dress protection to overgeneralized ideas, as doing so could "t[ie] up a product or marketing idea" and "undermine" laws designed to avoid monopolizing products and ideas). Vague descriptions may also cause "jurors viewing the same line of products [to] conceive the trade dress in terms of different elements and features" and so the verdict may drive from "inconsistent findings." *Yurman Design*, 262 F.3d at 117.

In sum, because it has not clearly defined its claimed trade dress, plaintiff has raised no triable issue as to inherent distinctiveness. *See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 634 (6th Cir. 2002) (explaining the inability to describe exactly which design aspects merit protection signals an improperly general claim) (citation omitted). The court grants summary judgment for defendant on this theory.

B. <u>Secondary Meaning</u>

Even if a claimed trade dress is not inherently distinctive, a claimant may prove acquired distinctiveness over time, also known as "secondary meaning." *Wal–Mart Stores*, 529 U.S. at 211. Trade dress develops secondary meaning "when in the minds of the public, the primary significance of the [claimed trade dress] is to identify the source of the product rather

than the product itself." *Id.* (citation and quotations omitted).  To survive summary judgment, the claimant must file sufficient evidence to allow a reasonable juror to find that a "substantial segment of consumers and potential consumers" associate the alleged trade dress with a single source of the product.  *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (citation and quotations omitted); *see also Savant Homes*, 809 F.3d at 1141 (granting summary judgment where plaintiff raised no factual issue as to secondary meaning); *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 564 (2d Cir. 1990) ("The existence of secondary meaning is a question of fact with the burden of proof on the party claiming exclusive rights in the designation.").  Secondary meaning can be established through direct evidence, such as consumer surveys or consumer testimony, or through circumstantial evidence, such as the "length of time the mark has been used, the extent of advertising, and the volume of sales[.]"  *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (citation and quotations omitted). Evidence the defendant deliberately copied the claimed trade dress may, when accompanied by other corroborating evidence, permit the court to infer the trade dress had acquired secondary meaning.  *Fuddruckers*, 826 F.2d at 844-45 (explaining evidence of copying, without more, does not prove secondary meaning; "[c]ompetitors may intentionally copy product features for a variety of reasons unrelated to secondary meaning"); *cf. Clicks*, 251 F.3d at 1262, 1264 (claimant entitled to inference of secondary meaning based on evidence of intentional imitation paired with "substantial evidence" from consumer surveys showing "trade dress . . . had acquired secondary meaning.").

Here, EZ-Pedo raises no triable issue regarding secondary meaning.  Not one of its promotional advertisements was on the market for more than a year before the alleged infringements happened.  Fisher Decl. ¶¶ 5, 8, 13, 17-18; <u>Braun Inc. v. Dynamics Corp. of Am.</u>, 975 F.2d 815, 826 (Fed. Cir. 1992) ("A claim of trade dress infringement fails if secondary meaning did not exist before the infringement began).  Rather, EZ-Pedo concedes its Blonde Girl trade dress had been in use for only four months, from March to July of 2014, before discovering defendant's similar image, *id.* ¶¶ 13-14; its Gears trade dress had been in use for less than a year, from mid-2014 through June 2015, before the alleged infringement, *id.* ¶¶ 17-19; and its Blue

13

CAD trade dress, though first used in mid-2013, was only consistently displayed beginning in 2014, and the alleged infringement occurred in May 2014, *id.* ¶¶ 5-8. Considering secondary meaning is something acquired through "long use and favorable acceptance," the short timeframe of EZ-Pedo's use alone is potentially fatal to its claims. *Vuitton Et Fils S.A. v. J. Young Enterp., Inc.*, 644 F.2d 769, 777 (9th Cir. 1981); *see also* <u>Co-Rect Prod., Inc. v. Marvy! Advert. Photography, Inc.</u>, 780 F.2d 1324, 1330 (8th Cir. 1985) ("To establish secondary meaning, the user must show that the mark or symbol by long and exclusive use[.]") (citations and quotations omitted).

Courts frequently reject secondary meaning claims based on similarly short periods. *See, e.g.*, *Braun*, 975 F.2d at 826 (rejecting secondary meaning argument despite evidence of unsolicited media coverage, television and newspapers advertisements, and sales success; noting "it is difficult for a product to acquire secondary meaning during an 18-month period."); *Cicena Ltd. v. Columbia Telecomm. Grp.*, 900 F.2d 1546, 1551 (Fed. Cir. 1990) (use for only 18 months is "evidence pointing strongly away from a finding of secondary meaning"); *Burke–Parsons–Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 595–96 (6th Cir. 1989) (characterizing 20 months as "very short" and deeming it strong evidence against inferring secondary meaning); *Co–Rect Products*, 780 F.2d at 1332 (affirming summary judgment for defendant; finding "ten months is simply not sufficient time to establish secondary meaning in the market place.") (citation omitted).

Compounding this potential fatality is the weak nexus between the claimed trade dress and the source the trade dress purportedly identifies. First, there is no consistent theme between the three advertisements, thus diminishing the possibility that consumers associated these advertisements with the same source. Indeed, each advertisement drastically differs from the other two—a blonde girl on the beach, a deep-blue-shaded tooth, and gears next to an "engineered for" slogan. Second, not one of these advertisements was ever placed on EZ-Pedo's product or product packaging, further weakening any association. Although plaintiff maintains it started placing small blue dots on some of its smaller dental crowns to associate the product with

the Blue-CAD campaign, this argument is unavailing considering plaintiff has filed no evidence or images pertaining to these alleged blue dots. *See* Fisher Decl. ¶ 7 & Ex. A.

Moreover, the record is completely devoid of direct evidence suggesting any consumer, let alone "a substantial portion" of consumers, associates any of the alleged trade dress with the EZ-Pedo brand. *Cf. Clicks*, 251 F.3d at 1262 (finding "substantial evidence" of secondary meaning; "Chief among this evidence was a survey . . . purporting to demonstrate that patrons associated the look of Clicks with that establishment and not others."). Instead, EZ-Pedo has filed a single declaration from its founder, stating "[t]he pediatric dentistry community has come to associate the Blue Crown CAD imagery with EZ-Pedo's products. I know this . . . from specific conversations I have had with purchasing pediatric dentists who have stated they recognize the Blue Crown CAD as symbolizing our products." Fischer Decl. ¶ 7. This vague, self-serving declaration pertaining to a single advertisement, without any consumer confirmation, raises no triable issue. *See Seirus Innovative Accessories, Inc. v. Gordini U.S.A. Inc.*, 849 F. Supp. 2d 963, 985 (S.D. Cal. 2012) (rejecting similarly vague, self-serving declaration).

While EZ-Pedo's founder also emphasizes how frequently EZ-Pedo printed and disbursed the claimed trade dress and highlights which trade journals featured the trade dress, this effort does not salvage these claims. *See* Fisher Decl. ¶ 6. Although sales success, advertising expenditures and media coverage may show consumers were so exposed to trade dress that they have come to associate it with a single source, the evidence here does not support the possibility of such a finding. EZ-Pedo's evidence again consists solely of the one self-serving declaration containing vague, conclusory facts without any supporting evidence. Fisher Decl. ¶¶ 3, 6 (citing "thousands" of printouts and claiming EZ-Pedo spent "substantial time and energy" promoting the imagery). Second, that each advertisement was on the market a year at most tempers EZ-Pedo's claim that it expended "substantial" time and money acquiring an association in consumers' minds between it and its products. Third, "prominent display" in a trade journal, *see* Fisher Decl. ¶ 12, is not the kind of media coverage that shows the "enthusiasm and loyalty" of plaintiff's customers. *Cicena Ltd. v. Columbia Telecommunications Grp.*, 900 F.2d 1546, 1551 (Fed. Cir. 1990).

Based on the record before the court, no reasonable juror could find EZ-Pedo's claimed Beach Girl, Gears or Blue CAD trade dress has acquired secondary meaning. The court therefore will not infer secondary meaning based on the evidence that defendant imitated the claimed trade dress. *See Fuddruckers*, 826 F.2d at 844-45 ("Competitors may intentionally copy product features for a variety of reasons unrelated to secondary meaning").. Summary judgment for defendant is warranted as to this theory as well.

IV. CONCLUSION

Because plaintiff raises no triable issues regarding either inherent or acquired distinctiveness as to its claimed Beach Girl, Gears and Blue CAD trade dress, the court GRANTS defendant's partial summary judgment motion. Plaintiff's Lanham Act claims remain only to the extent they derive from the one advertising campaign defendant's motion does not address, plaintiff's lavender advertising campaign.

The DOE defendants are DISMISSED.

This resolves ECF No. 42. The Final Pretrial Conference on plaintiff's remaining claims is set for **March 15, 2018 at 2:30 p.m**., with a jury trial date to be set at the pretrial conference. The parties' joint pretrial statement is due seven days before the conference.

IT IS SO ORDERED.

DATED: February 14, 2018.

_____
UNITED STATES DISTRICT JUDGE